UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AJ RUIZ CONSULTORIA EMPRESARIAL S.A., solely as Judicial Administrator and foreign representative of SCHAHIN HOLDINGS S/A, *et al.*,<br><br>       Plaintiff,<br><br>-against-<br><br>BANCO BILBAO VIZCAYA ARGENTARIA, S.A., *et al.*,<br><br>       Defendants. | 24-CV-3466 (JGLC) |
| AJ RUIZ CONSULTORIA EMPRESARIAL S.A., solely as Judicial Administrator and foreign representative of SCHAHIN HOLDINGS S/A, *et al.*,<br><br>       Plaintiff,<br><br>-against-<br><br>BANK OF CHINA LIMITED, *et al.*,<br><br>       Defendants. | 24-CV-3497 (JGLC) |

## OPINION AND ORDER

JESSICA G. L. CLARKE, United States District Judge:

  This action comes before the Court from the United States Bankruptcy Court for the Southern District of New York. Plaintiff, as sole Judicial Administrator and foreign representative of the Debtors, brings claims for aiding and abetting breach of fiduciary duty and unjust enrichment against Defendants, who are various international financial institutions. Defendants moved to dismiss this action for expiration of the statute of limitations, lack of standing, failure to state a claim upon which relief can be granted, lack of personal jurisdiction, lack of subject matter jurisdiction over immune defendants, and improper venue. Judge Lisa G. Beckerman issued a Report & Recommendation in favor of Defendants on all grounds. For the

reasons stated below, the Court GRANTS the motion to dismiss for lack of standing and does not reach the remaining issues.

## BACKGROUND

The Court presumes the parties' familiarity with the facts and history as described in the Report & Recommendation ("R&R") issued by Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). ECF No. 1-1 ("R&R"). Below, the Court only reviews the facts pertinent to the issue of standing, drawn from the Amended Complaint in the bankruptcy case, which are presumed to be true. *See Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006).

The question before the Court concerns the relationship of four parties: the Debtors, the Plaintiff, the Defendants, and the Borrowers. Debtors are a set of companies in the oil and gas business subject to a bankruptcy case in Brazil and a Chapter 15 bankruptcy case in Florida. Amended Complaint ¶¶ 1, 7, 75, 79, 83–84, *AJ Ruiz Consultoria Empresarial S.A. v. Bank of China Limited, et al.*, No. 21-1216 (LGB), (Bankr. S.D.N.Y. 2021) ("Bankr. Dkt."), ECF No. 1-64 ("AC"). Plaintiff is the sole Judicial Administrator and foreign representative of the Debtors and seeks to represent the interests of Debtors' unpaid creditors. *Id.* ¶¶ 1, 14. Defendants, creditors of Debtors, are various international financial institutions whom Plaintiff claims unlawfully obtained funds at the expense of Debtors' other creditors. *Id.* ¶¶ 15–21. Borrowers are Black Gold Drilling LLC ("Black Gold") and its wholly owned subsidiaries. *Id.* ¶¶ 29–30, 35.

Plaintiff alleges that Debtors and Borrowers operated as a single economic entity known as the Schahin Group. *Id.* ¶¶ 1, 22, 29–34. The Schahin Group is comprised of several international companies founded by brothers Milton and Salim Schahin, focused on the oil and gas industry. *Id.* ¶ 22. Schahin Group entities, including Borrowers, are all ultimately owned by

the Schahin brothers. *Id.* ¶¶ 23–30. Borrowers and several other Schahin Group entities shared the same chief financial officer. *Id.* ¶ 31. In addition, other Schahin Group entities provided services to Borrowers without contracts to do so, and operating expenses and revenues associated with Borrowers were allocated to other Schahin Group entities. *Id.* ¶ 32. In its 2015 petition for reorganization, the Schahin Group stated that Borrowers and other Schahin Group entities were managed together as part of a single integrated economic conglomerate. *Id.* ¶ 34.

One of the Schahin Group entities is Sea Biscuit International Inc. ("Sea Biscuit"), a holding company that owns Borrower Black Gold as a special purpose vehicle. *Id.* ¶¶ 27–28. Borrower Black Gold in turn owns Borrowers Baerfield Drilling LLC ("Baerfield") and Soratu Drilling LLC ("Soratu")— special purpose vehicles set up as Delaware limited liability companies to hold, respectively, two oil rigs named the *Amazonia* and the *Pantanal* (the "Oil Rigs"), which lie at the heart of Plaintiff's claims. *Id.* ¶¶ 28–30, 36.

Between 2007 and 2009, Defendants loaned Borrowers $920 million to construct the Oil Rigs, which served as collateral for the loans. *Id.* ¶¶ 35–45. The loans were made according to several agreements, each of which contained a clause stating that the agreements "shall be governed by, and construed in accordance with, the law of the State of New York excluding choice of law principles of such laws which would require the application of the laws of a jurisdiction other than the State of New York." *Id.* ¶ 46.

In September 2014, after the Schahin Group collectively experienced months of financial decline, Borrowers Baerfield and Soratu sold the Oil Rigs to subsidiaries of non-party Industrial and Commercial Bank of China ("ICBC"). *Id.* ¶¶ 47, 53–54. The transaction was for several hundred million less than what the Oil Rigs had been appraised for in earlier months. *Id.* ¶ 58. ICBC then leased the Oil Rigs back to Baerfield and Soratu. *Id.* ¶ 54. The sale-leaseback's lead

negotiators were Eonio Rocha and Gustavo Shinohara, CEO and CFO, respectively, of a Schahin Group Debtor entity and a Schahin Group non-Debtor entity (Schahin Oil & Gas Ltd.). *Id.* ¶¶ 14, 55. Plaintiff alleges that Rocha and Shinohara secretly plotted to leave the Schahin Group and start their own firm, and used inside information to facilitate the sale-leaseback to their own benefit. *Id.* ¶ 69. Plaintiff further alleges that Defendants, working with Rocha and Shinohara, illicitly participated in the sale-leaseback negotiations to benefit from proceeds of the sale. *Id.* ¶¶ 56–66.

On April 17, 2015, Debtors filed for reorganization in Brazil, which the Brazil court converted to bankruptcy in 2018. *Id.* ¶¶ 7, 75, 79. In 2019, the United States Bankruptcy Court for the Southern District of Florida granted recognition of the Brazil case as a foreign main proceeding under Chapter 15 of the Bankruptcy Code. *Id.* ¶ 84. However, neither Borrowers nor Sea Biscuit are listed as Debtors in the Brazil and Florida bankruptcies, and Borrowers do not appear to be subsidiaries or shareholders of any Debtor entities. *See id.* ¶¶ 85, 88; Order Approving Amended Petition, *In re Schahin Holdings S.A.*, Case No. 19-BK-19932 (RAM) (Bankr. S.D. Fla. Oct. 21, 2019), Dkt. 19 (listing the Debtors).

Plaintiff asserted claims for aiding and abetting breach of fiduciary duty and unjust enrichment against the Defendants, contending that Defendants' conduct damaged creditors by causing the Schahin Group to give up hundreds of millions of dollars. *See* AC ¶¶ 97–113. On May 19, 2022, Defendants filed a consolidated motion to dismiss in the Bankruptcy Court for expiration of the statute of limitations, lack of standing, failure to state a claim upon which relief can be granted, lack of personal jurisdiction, and lack of subject matter jurisdiction over immune defendants. *See* Bankr. Dkt. ECF No. 40. Defendant International Finance Corporation then filed an additional motion to dismiss or transfer on immunity grounds and for improper venue. *See*

4

Bankr. Dkt. ECF No. 45. On February 6, 2024, the Bankruptcy Court issued an opinion finding merit in each of Defendants' arguments, which this Court must review as a Report & Recommendation. Bankr. Dkt. ECF Nos. 89, 90. Plaintiff objects to the R&R. ECF No. 2 (the "Objection" or "Obj.").

## LEGAL STANDARD

In non-core proceedings, bankruptcy courts may submit proposed findings of fact and conclusions of law to the district court, which holds authority over final judgments. *In re Ne. Indus. Dev. Corp.*, No. 14-CV-7056 (NSR), 2015 WL 3776390, at *1 (S.D.N.Y. June 16, 2015). Recommendations on motions to dismiss are subject to *de novo* review. Fed. R. Bankr. P. 9033(d); 28 U.S.C. § 157(c)(1).

On a motion to dismiss resting on multiple grounds under Federal Rule of Civil Procedure 12(b), a court must first avail itself that it has constitutional power to adjudicate the case before assessing arguments on merit. *See Abele v. Markle*, 452 F.2d 1121, 1124 (2d Cir. 1971) (noting the prohibition on advisory opinions by federal courts in the absence of a justiciable case). In other words, the Court must first examine dismissal under Rule 12(b)(1). "A case is properly dismissed . . . under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a such a motion, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (citation omitted). A court may also consider evidence outside the pleadings, such as affidavits and exhibits. *See Makarova*, 201 F.3d at 113.

## DISCUSSION

Defendants contend, and the R&R agrees, that Plaintiff fails to satisfy the "injury in fact" requirement of Article III standing because creditors lack legal entitlement to the proceeds of the sale-leaseback, due to the attenuated relationship between the relevant parties. R&R at 45. The Court examines the issue of standing in three parts. First, the Court sets forth the applicable law and determines that the question hinges on whether the corporate veil has been pierced. Second, choice of law principles dictate that Delaware law governs the piercing of the corporate veil. Finally, the Court concludes that Plaintiff fails to allege that the Borrowers' corporate veils have been pierced, and creditors of Debtors do not have the legal entitlement to the proceeds of the sale-leaseback necessary to establish standing.

## I.   Article III Standing and the Corporate Veil

Standing is required under Article III of the Constitution for a federal court to adjudicate a case. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975). To assert standing, Article III demands three elements: (1) Plaintiff must have suffered an injury in fact; (2) the injury must be fairly traceable to the Defendants' challenged conduct; and (3) a favorable resolution of the case is likely to redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Injury in fact is defined as "a concrete and particularized invasion of a legally protected interest." *In re Extended Stay, Inc.*, No. 09-BK-13764 (JLG), 2020 WL 10762310, at *29 (Bankr. S.D.N.Y. Aug. 8, 2020) (internal citation omitted); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).

Here, the question is whether Plaintiff, representing the interests of Debtors' creditors, can hold a legally protected right in the assets of the non-Debtor Borrowers. Debtors' creditors indisputably hold a legally protected right in the assets of the Debtors. And to be sure, trustees such as Plaintiff may bring general creditors' claims involving allegations of "secondary harms

6

done to them by . . . third parties in wrongfully diverting assets of the [Debtors]." *In re Tronox Inc.,* 855 F.3d 84, 103–04 (2d Cir. 2017). But Plaintiff's claim is not that Borrowers wrongfully diverted the assets of Debtors. Plaintiff's claim is that Defendants wrongfully diverted the assets of Borrowers, which then impacted the assets of Debtors. Plaintiff does not offer, and the Court has not identified, case law or statute supporting the existence of injury in fact in this once-removed connection.

Nonetheless, the concept of piercing the corporate veil, and in some jurisdictions, reverse-piercing the corporate veil, may allow liabilities (and by inference, creditors' rights to assets) to flow between corporate debtors and their principals, parents, or subsidiaries. *See In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 445 (S.D.N.Y. 2019) (citing *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)); *Murray v. Miner*, 876 F. Supp. 512, 516 (S.D.N.Y. 1995) (citing *Kalb, Voorhis & Co. v. American Financial Corp.*, 8 F.3d 130, 132 (2d Cir. 1993)). In New York, for example, the corporate veil is pierced where parents, principals, or shareholders "exercise[] complete domination over the [subsidiary] corporation . . . such that the [subsidiary] had no separate identity, and that such domination was used to commit a fraud . . . ." *See, e.g., In re Stage Presence, Inc.*, 592 B.R. 292, 302 (Bankr. S.D.N.Y. 2018), *aff'd*, No. 12-BK-10525 (MEW), 2019 WL 2004030 (S.D.N.Y. May 7, 2019); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 418 (S.D.N.Y. 2011).

Although neither the R&R nor Plaintiff's briefing explicitly raise an issue regarding piercing the corporate veil, the basis of Plaintiff's standing argument is that all of the Schahin Group's creditors were harmed by the sale-leaseback transaction because Debtors and Borrowers were a part of a "single economic entity." Obj. at 28. This is essentially a claim that the corporate

7

veil has been pierced, and Plaintiff appears to suggest as much in the Amended Complaint. *See* AC ¶ 88. Accordingly, the Court will examine it as such.

## II. Delaware Law Applies Under Choice of Law Analysis

Piercing the corporate veil is a state law matter. *Sonnenblick-Goldman Co. v. ITT Corp.*, 912 F. Supp. 85, 88 (S.D.N.Y. 1996). Courts in the Second Circuit apply the choice of law principles of the forum state, in this case New York,[1] to determine which state's law governs a veil piercing. *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995). Borrowers' loan agreements direct the same result, requiring that actions related to them "shall be governed by, and construed in accordance with, the law of the State of New York excluding choice of law principles of such laws which would require the application of the laws of a jurisdiction other than the State of New York." AC ¶ 46. "Under New York choice of law principles, the law of the state of incorporation of the corporation subject to potential veil piercing w[ill] govern the claim." *In re Saba Enterprises, Inc.*, 421 B.R. 626, 648 (Bankr. S.D.N.Y. 2009) (collecting cases). Because Borrowers are special purpose vehicles incorporated in Delaware, *see* AC ¶¶ 28–30, Delaware state law applies.

## III. The Corporate Veil Has Not Been Pierced and Plaintiff Lacks Standing

The separate legal existence of business entities is central to Delaware public policy. *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 706 (Del. Ch. 2021) (citing *Paul Elton, LLC v. Rommel Del., LLC*, 2020 WL 2203708, at *14 (Del. Ch. May 7, 2020)). "Thus, there exists a presumption of corporate separateness, even when a parent wholly owns its

---

[1] Defendant International Finance Corporation ("IFC") contends that venue is improper because the forum selection clause of the Borrowers' loan agreements does not cover this instant action. ECF No. 3 at 3–4. The Court disagrees. The agreements provide that parties waive objections to venue for any actions "arising out of or in connection" with the loan agreements. AC ¶ 46. The language is sweeping, and although Plaintiff was not a signatory, IFC was and must be bound.

subsidiary and the entities have identical officers and directors." *Wenske v. Blue Bell Creameries, Inc.*, No. 2017-699 (JRS), 2018 WL 5994971, at *5 (Del. Ch. Nov. 13, 2018). In a claim that a subsidiary and a parent "operate as a single economic entity such that it would be inequitable for the Court to uphold a legal distinction between them," piercing the corporate veil "requires that the corporate structure cause fraud or similar injustice." *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, No. 2022-0378 (LWW), 2023 WL 5688392, at *5 (Del. Ch. Sept. 5, 2023) (cleaned up) (citing *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 707 (Del. Ch. 2021) and *Wallace v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999)). While a showing of fraud is not necessary, "the requisite injustice or unfairness . . . is also not simple in nature but rather something that is similar in nature to fraud or a sham." *In re Foxmeyer Corp.*, 290 B.R. 229, 236 (Bankr. D. Del. 2003). This fraud or similar injustice must "be found in the defendants' use of the corporate form." *Id.* (cleaned up).

     Plaintiff has not alleged that the relationship between Borrowers and Debtors meets this high bar. At best, Plaintiff has alleged that Borrowers were owned and substantially operated by the same owners as Debtors. But Plaintiff has alleged no facts to suggest that the corporate structure between Borrowers and Debtors causes fraud or similar injustice, or that Borrowers are sham entities that exist as vehicles for fraud. If there was any wrongful conduct involved, then Plaintiff's allegations show Borrowers to be "victim[s]", "not perpetrator[s]." *Principal Growth Strategies, LLC v. AGH Parent LLC*, No. 2019-0431 (JTL), 2024 WL 274246, at *16–17 (Del. Ch. Jan. 25, 2024) (finding no piercing for special purpose vehicle that suffered significant losses as the result of alleged third-party fraud, even though the parent company owned majority shares of the special purpose vehicle). Indeed, because veil piercing requires fraud or similar injustice in the creation of the corporate structure, it appears to this Court that the doctrine cannot properly

apply to a corporation seeking to pierce a veil that it has created for its own benefit—in such a case, a court runs the risk of rewarding a corporation for its structural fraud. *See, e.g.*, *Manichaean*, 251 A.3d at 714 n.10 (noting, without adopting, that "most commentators agree . . . there is no equity to be served by allowing a company's veil to be pierced for the benefit of the individuals who themselves have created the company") (cleaned up); *see also R. R. Donnelley & Sons Co. v. Marino*, 505 F. Supp. 3d 194, 204 (W.D.N.Y. 2020) (holding that in New York, courts will not allow a parent to pierce the corporate veil it created for its own benefit so as to assert the claims of its subsidiary) (citing *Bross Utils. Serv. Corp. v. Aboubshait*, 618 F. Supp. 1442, 1445 (S.D.N.Y. 1985)).

To be sure, Plaintiff has alleged that there is a fraud at issue—that executives operating Borrowers worked with Defendants to deprive the Schahin Group of its assets. AC ¶¶ 56–66. But this is not fraud that veil piercing is concerned with—that is, fraud "found in the defendants' use of the corporate form." *In re Foxmeyer Corp.*, 290 B.R. at 236 (Bankr. D. Del. 2003). Moreover, although executives operating Borrowers facilitated the fraud, Plaintiff has taken the position that these executives' misconduct cannot be attributed to Borrowers or the Schahin Group. Obj. at 30. In other words, any "fraud or similar injustice" committed by the executives is irrelevant to whether the veil between Borrowers and the Schahin Group has been pierced. Indeed, if executives did represent Debtors in facilitating the wrongful conduct (such that their acts of fraud and similar injustice could implicate the corporate veil analysis) that raises a serious question of prudential standing under the *Shearson Lehman Hutton, Inc. v. Wagoner* rule: that "when a bankrupt corporation has joined with a third party in defrauding its creditors, the trustee cannot recover against the third party for damage to the creditors." 944 F.2d 114, 118 (2d Cir. 1991); *see* R&R at 45–49.

Plaintiff's Complaint suggests a reliance on Brazilian law for treating the Schahin Group as a single entity for the purposes of creditor and trustee standing. *See* AC ¶ 88. But as explained in Section II's choice of law analysis, Brazilian law is not applicable to the question. Even if the Court were to apply Brazilian law, it would reach the same result. To bring Borrowers' assets into the bankruptcy estate under Brazilian law, trustees "must prove that the business of the third party with the debtor occurred with the intent to defraud the creditors of the debtor and that the third party actually belongs to the same economic group as the bankrupt company." *In re Petroforte Brasileiro de Petroleo Ltda.*, 542 B.R. 899, 904 (Bankr. S.D. Fla. 2015); Hon. James L. Garrity, Jr. & Susan Power Johnston, *2015 Developments in Chapter 15 Jurisprudence*, 2016 ANN. SURV. OF BANKR. LAW 31 (Sept. 2016). Again, the fraud requirement is not met by the pleadings.

Finally, Plaintiff has insisted throughout the Objection that should the action be dismissed, Debtors' non-Defendant creditors would suffer significant financial injustice. *See* Obj. *generally*; AC ¶¶ 1, 7, 101–02. The Court acknowledges that an ultimate decision regarding veil-piercing should be based on some "overall element of injustice or unfairness." *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 707 (Del. Ch. 2021) (citing *Doberstein v. G-P Indus., Inc.*, No. 9995-VCP, 2015 WL 6606484, at *4 (Del. Ch. Oct. 30, 2015)). However, the pleadings are clear that Borrowers' incorporation as special purpose vehicles legally distinct from Debtors was lawful. To now permit Plaintiff to assert a legally protected interest in Borrowers' assets would be to disregard the corporate form and would be inconsistent with case law. This action is not the appropriate vehicle for relief. Accordingly, the Court finds that Plaintiff lacks standing to proceed.

## CONCLUSION

For the foregoing reasons, the R&R is ADOPTED solely with respect to the order and opinion regarding Article III standing. Defendants' motion to dismiss is GRANTED and the action is DISMISSED without prejudice. The Clerk of Court is directed to close the case.

Dated: March 27, 2025
       New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge